## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARCUS TAYLOR, a minor, by his parents and next friends, Benjamin and Beverly Taylor, 8913 Woodburn Court, Lanham, Maryland 20706, <br><br> and <br><br> BENJAMIN AND BEVERLY TAYLOR, 5713 Foggy Lane, Derwood, Maryland 20855, <br><br> Plaintiffs, <br><br> v. <br><br> DR. ANDRE J. HORNSBY (officially as) Chief Executive Officer Prince George's County Public Schools, 14201 School Lane, Upper Marlboro, Maryland 20772 <br><br> and <br><br> BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY, 14201 School Lane, Upper Marlboro, Maryland 20772, <br><br> Defendants. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Preliminary Statement

1.     This is a reimbursement action for costs incurred by plaintiffs Benjamin and

Beverly Taylor for the costs of educating their son, Marcus Taylor, in a private school for

1

disabled children after Prince George's County Public Schools ("PGCPS" or "the school system") failed to provide Marcus with a free appropriate public education ("FAPE") as required under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*.

**Jurisdiction**

2.       This Court has jurisdiction over this matter pursuant to the IDEA, 20 U.S.C. §§ 1400-1461; the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; 42 U.S.C. § 1983 ("Section 1983"); and 28 U.S.C. §§ 1331 and 1343. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. This court has pendent jurisdiction pursuant to MD. CODE ANN. EDUC. § 8-401 *et seq*., (1996). Plaintiffs have exhausted their administrative remedies and appeal to this court from a decision of an Administrative Law Judge of the Maryland Office of Administrative Hearings, MSDE-PGEO-OT-200200356 (December 18, 2002).

**Parties**

3.       Marcus Taylor ("Marcus") is a disabled student, eligible to receive special education and related services, who at all times relevant to this action resided in Prince George's County, Maryland. His parents, Benjamin and Beverly Taylor, bring this action on Marcus's behalf and in their own right.

4.       Dr. Andre J. Hornsby is the Chief Executive Officer of PGCPS and, as such, is the public official charged with the responsibility for ensuring that PGCPS complies with federal law as to the education of disabled children. He is sued in his official capacity.

5.       The Board of Education of Prince George's County is a local educational agency as defined by 20 U.S.C. § 1401, and, as such, receives financial assistance from the United States

2

Department of Education. The Board of Education is responsible for complying with federal law with respect to the provision of a FAPE to each disabled child in Prince George's County.

**Factual Allegations**

6.     Marcus Taylor, born February 3, 1991, is the son of Benjamin and Beverly Taylor, and resides in Prince George's County at 8913 Woodburn Court, Lanham, Maryland 20706.

7.     Marcus is a student with specific learning disabilities as defined by the Individuals with Disabilities Education Act, and has concomitant emotional problems including low self esteem and depression.

8.     Marcus's parents have both served in the United States Armed Services, and he therefore has moved around a lot during his educational career. He first attended a day care center, the Children's Learning Center in San Diego, California from 1991 through 1994.

9.     Marcus then attended part-time daycare at the Child Development Center in Albany, Georgia, and in 1996 began kindergarten there at the Sylvandale Elementary School.

10.    During the summer of 1998, Marcus's family moved to Ikego, Japan, and Marcus began second grade at Ikego Elementary School.

11.    At Ikego Elementary School, Marcus was referred on February 25, 2000, to the Educational and Developmental Intervention Services, for consideration of special education services. The meeting was held on March 16, 2000.

12.    The psychological completed at Ikego in February of 2000 noted Marcus to have both learning disabilities and depression or dysthymia. He responded poorly to prescribed medication and refused to participate in ongoing counseling. From September 1999 to February

3

2000, he would respond to demands in class by putting his head on the desk and pulling his jacket over his head.

13.     For the 2000-2001 school year, Marcus was provided an initial IEP and transferred to the Sullivans Elementary School in Yokohama, Japan.  The IEP targeted both learning disabilities and behavioral issues, and involved direct special education intervention (10 hours of pull-out per week and 15 minutes for consult per week).  He reportedly responded to such an approach and according to his parents, had his best year in school.

14.     In the summer of 2001, Marcus's family moved again, this time to Prince George's County.  Marcus's parents placed Marcus in a small private non-special education school, Ascension Lutheran School in Hyattsville, this time for fifth grade.

15.     Marcus encountered significant problems at Ascension.  He was unable to keep up with the rest of the class, was unable to stay on task, and exhibited a number of behavioral problems.

16.     Marcus's parents explored private special education options for him for the 2002-2003 school year.  On May 6, 2002, they wrote PGCPS through counsel to advise the school system of their desire for services from PGCPS and of their consideration of Marcus being placed at The Kingsbury Day School ("KDS"), a special education program in Northwest Washington, D.C.

17.     At the time that they wrote PGCPS, Marcus's parents also included a number of evaluative reports on Marcus for school system consideration.

18.     PGCPS first responded to the Taylors' May 6th request with a July 2, 2002, notice of an initial Individualized Educational Program ("IEP") meeting proposed for July 18, 2002.

4

19.     The Taylors agreed to attending the IEP meeting on July 18, 2002, and also, on July 11, 2002,  noted their Due Process Appeal under the IDEA, an appeal earlier to the one currently the subject of this action.  The appeal application seeks placement at Kingsbury by PGCPS and states as its primary ground the failure of PGCPS to respond to the Taylors' request.

20.     School began in Prince George's County Public Schools on August 26, 2002.

21.     On July 18, 2002, the Taylors attended an IEP meeting with legal counsel.  They authorized the school system to conduct updated educational and psychological evaluations of Marcus, and requested Occupational Therapy and speech/language assessments as well.

22.     On August 15, 2002, the Taylors returned to the IEP table along with counsel.  The school system's psychological report was shared with them, a report that once again identified significant learning disability and emotional concerns.  They received a printout of Marcus's educational testing, but no report was presented due to an error on the part of the evaluator.  They renewed their request for both Occupational Therapy and speech/language assessments, asking that the development of an IEP be postponed until those assessments could be completed.  PGCPS staff agreed to the need for both evaluations but declined to postpone the IEP development.  The meeting then continued over the Taylors' objection.

23.     During the IEP meeting on August 15, 2002, PGCPS had no Occupational Therapist in attendance and a number of other participants had to leave before the discussion of all the goals and objectives, or placement, including the school system's psychologist who left during the discussion of the social/emotional section of the IEP.  On a number of occasions, the Taylors, through their counsel asked that the meeting be continued to another date before school

5

was set to resume, in order to have all necessary parties in attendance. PGCPS staff refused the requests.

24.     At the conclusion of the August 15th IEP meeting, PGCPS proposed a special education program at Gaywood Elementary School, but did not provide a completed IEP to the parents or their counsel, or any written explanation or documentation of the nature of the proposed placement.

25.     At the August 15th IEP meeting, Marcus's parents advised PGCPS that Marcus was going to be starting at Kingsbury for the 2002-2003 year due to the school system's delays and the Taylors' belief that Marcus requires the intensity and support of a full-time special education program.

26.     The Kingsbury Day School is a full-time special education program in the District of Columbia, directed by Marlene Gustafson, an acknowledged expert in special education.

27.     The great majority of children who attend Kingsbury are placed and funded by local educational agencies under the IDEA and have IEP's that are annually reviewed and monitored.

28.     Kingsbury determined that Marcus is an appropriate student for their program and that he would receive educational benefit at the school. That is also the opinion of Ms. Gustafson.

29.     Marcus did attend Kingsbury for the 2002-2003 school year and received significant educational benefit there.

30.     The Taylors' July 11th Due Process Appeal was erroneously dismissed by an Administrative Law Judge of the Office of Administrative Hearings for that stated reason that it had been prematurely filed before the school year had begun.

31.     The Taylors filed a second Due Process Appeal on September 9, 2002. The matter came to hearing on October 7 and 8, 2002, with a Decision issuing on December 18, 2002.

32.     At the Due Process Hearing, clear and convincing evidence was introduced that, although the school system had the parents' request for services during the 2001-2002 school year, it never sought to observe Marcus in class, a requirement of law and sound educational policy.

33.     At the Due Process Hearing, clear and convincing evidence was introduced that the delays in processing Marcus's case and request for services were entirely the fault of PGCPS, and were primarily due to "unexplained bureaucratic failure."

34.     At the Due Process Hearing, clear and convincing evidence was introduced that PGCPS staff did not even know that they were required by federal law to observe Marcus in an educational or non-educational setting as part of the IEP process; they never conducted such an observation. They could provide no reason for not observing him.

35.     At the Due Process Hearing, clear and convincing evidence was introduced that the primary evaluator for PGCPS, the County's psychologist, did not know that Marcus's prior teacher had been involved in the IEP process and was totally unaware of how Marcus had done in school for the previous year.

36.     At the Due Process Hearing, clear and convincing evidence was introduced that the school system's speech therapist did not observe or evaluate Marcus in a group or classroom

7

setting, did not question others who testified that Marcus often could not be understood in conversation or class – but did not see a need for speech therapy. In fact, Mr. Taylor and the KDS speech therapist spoke of consistent problems understanding Marcus, something had been noted in prior language assessments, yet the school system's therapist did not even mention an intelligibility problem in either her report or her testimony.

37.    At the Due Process Hearing, clear and convincing testimony was introduced that the school system's speech therapist did not observe Marcus in a social setting and did not identify a number of the needs that he has, based upon past history, evaluations and how he is currently presenting in school.

38.    At the Due Process Hearing, clear and convincing evidence was introduced that, according to the expert in speech therapy working with Marcus at KDS, his articulation needs requiring therapy are "blatant" and "obvious."   As for his other language therapy needs, involving organization and pragmatics, the expert underscored the importance of seeing with Marcus in a school setting in order to understand the need.  She also noted that Marcus is already benefitting from therapy at KDS.

39.    At the Due Process Hearing, clear and convincing evidence was introduced that what reports were completed by PGCPS for the IEP process were shared with school system staff weeks before the meeting, but not provided to the parents until the actual meeting was underway, something that the school system actually calls, "best practice."

40.    At the Due Process Hearing, clear and convincing evidence was introduced that, according to the education director of the special education program at Gaywood, had she been

8

presented with the absence of necessary IEP participants at the meeting, as occurred on August
15th, she would have postponed the IEP meeting.

41.     At the Due Process Hearing, clear and convincing evidence was introduced that the
parents would have made themselves available for yet another IEP meeting before the beginning
of the school year if PGCPS had postponed the August 15th meeting to complete assessments or
to have the required individuals participate.

42.     At the Due Process Hearing, clear and convincing evidence was introduced that
Mr. Taylor asked for the August 15th IEP meeting to be postponed a number of times, when the
school system's psychologist left while being questioned about his report, when the school system
said it still had to conduct an OT evaluation, when the school system said that it still had to
conduct a speech/language assessment, when his counsel had to leave. Each time, the PGCPS
staff refused to reschedule without reason.

43.     At the Due Process Hearing, clear and convincing evidence was introduced that,
according to the school system's speech therapist, the County's IEP was never final since all of
the evaluations were not completed or considered.  It was a draft IEP.

44.     At the Due Process Hearing, clear and convincing evidence was introduced that the
school system's IEP was completed without an educational assessment report, without a speech
therapy evaluation, and without an OT evaluation, all of which the school system deemed
necessary to identify Marcus's needs.

45.     At the Due Process Hearing, clear and convincing evidence was introduced that the
final IEP and placement decisions made by the school system were made without the evaluating
psychologist present, without a special educator present, without Marcus's regular education

9

teacher present, and without even a school system general educator present, all in violation of federal and State law.

46.    At the Due Process Hearing, clear and convincing evidence was introduced that, at the conclusion of the IEP meeting, when there were only two school system staff left, Mr. Taylor was told by them, "This is our IEP, and we are proposing it be implemented at Gaywood Elementary." The decision had clearly been made at some earlier time and without even the pretense of discussion with the parents.

47.    At the Due Process Hearing, clear and convincing evidence was introduced that, if Marcus had been a KDS-funded child from PGCPS, neither the school system nor KDS would have attempted to complete his IEP while there were outstanding evaluations that had to be completed. Not only would it violate applicable law, but it would be unsound educationally since a complete picture of the student would not be possible.

48.    At the Due Process Hearing, clear and convincing evidence was introduced that Marcus needs both Occupational Therapy and Language Therapy according to KDS, but PGCPS had never made a decision on either related service.

49.    At the Due Process Hearing, clear and convincing evidence was introduced that the education director of the PGCPS special education program, who had not met Marcus or talked to anyone who has worked with him, could not state an opinion whether her program would be appropriate for him. All that she could say based on the records was that he "appears to be similar to other children" in the program.

50.    At the Due Process Hearing, clear and convincing evidence was introduced that placing Marcus in a classroom at Gaywood Elementary with the only other age peers being an

10

autistic child, a language-impaired child and an emotionally disturbed child would be inappropriate for a number of reasons, as explained by Marlene Gustafson, the Director of KDS and an expert in special education.

51.    At the Due Process Hearing, clear and convincing evidence was introduced that the primary consideration for any placement for Marcus at present is that it meet his emotional needs and deals with his shut-down behaviors and emotional fragility, something that is happening at KDS, but something that was only minimally recognized during the school system's IEP process. Because of these needs, Marcus requires a very structured, supportive placement where all transitions are carefully planned.

52.    At the Due Process Hearing, clear and convincing evidence was introduced that, even though Marcus was continuing to have problems with parts of his day at KDS, for probably only the second time in his life according to his father, he was coming home talking about school, what he did, what the teacher said and what the other kids did.

53.    At the Due Process Hearing, clear and convincing evidence was introduced that it is unclear as to what kind of classes Marcus would be in for the 25 hours per week of special education he would have at Gaywood.  No witness at the hearing explained the curriculum or the method of instruction in the program.

54.    At the Due Process Hearing, clear and convincing evidence was introduced that, after the August 15th IEP meeting, the Taylors attempted to get some information about the proposed placement at Gaywood only to be told by school staff there that they had never heard of Marcus

55.     At the Due Process Hearing, clear and convincing evidence was introduced that Marcus required and was receiving significant benefit from his placement at KDS.

56.     The school system's IEP was neither appropriate nor timely for Marcus.

57.     The proposed placement at Gaywood Elementary School could not meet Marcus's identified needs.

58.     The Kingsbury Day School is an appropriate placement for Marcus.

59.     Despite hearing clear and convincing evidence that PGCPS had violated Marcus's rights under federal and Maryland law, the Administrative Law Judge erroneously and unreasonably found that PGCPS had in fact proposed an appropriate education for Marcus.

60.     The administrative decision contains palpable errors of fact and law.

61.     Plaintiffs have exhausted all available Due Process rights.

## COUNT I

62.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 61.

63.     Defendants' failure to provide Marcus Taylor with a free appropriate public education violates plaintiff's rights under the IDEA, Section 504, Section 1983, and Maryland law.

## COUNT II

64.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 61.

65.     The failure of the Administrative Law Judge to order defendants to place and fund Marcus Taylor in an appropriate program violates the IDEA and Maryland Law.

## COUNT III

66.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 61.

67.     The Administrative Law Judge committed error, and violated plaintiffs' due process rights under the IDEA and Maryland law by failing to consider relevant, probative and admissible evidence and testimony offered by the parents.

## COUNT IV

68.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 61.

69.     The failure of defendants to provide plaintiffs with adequate due process procedures violates the IDEA, Section 504, Section 1983, and Maryland law.

## COUNT V

70.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 61.

71.     The Administrative Law Judge committed error, and violated plaintiffs' due process rights under the IDEA and Maryland law, by failing to render a proper decision on all substantive issues presented by the plaintiffs.

WHEREFORE, plaintiffs respectfully request that this Court:

1.      Issue judgment for plaintiffs and against defendants;

2.      Issue declaratory relief that defendants violated plaintiffs' rights under applicable law;

3.      Issue injunctive relief ordering defendants to reimburse plaintiffs for the tuition expenses and costs incurred in enrolling Marcus Taylor at the Kingsbury Day School for the 2002-2003 school year, while declaring Kingsbury to be Marcus's current educational placement under the IDEA.

4.    Order defendants to pay plaintiffs' reasonable attorneys' fees and costs, including the fees

and costs of this action; and

5.    Award any other relief that this Court deems just.

Respectfully Submitted,

Michael J. Eig                    #07718

Haylie M. Iseman              #14782

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue
Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Plaintiffs

14